### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**EDWARD GOODWIN,**
**DELANIE GOODWIN,**

        **Plaintiffs,**

**v.**                                       **Case No. 3:16-cv-364/MCR/CJK**

**WALTON COUNTY FLORIDA,**

        **Defendant.**
_____/

## ORDER

      This is a land use case.  Plaintiffs have filed constitutional challenges to two ordinances passed by the Defendant Walton County, Florida, and a request for entry of a preliminary injunction as to one of them.  ECF No. 43.  Defendant has filed a Motion to Dismiss Plaintiffs' claim against that ordinance.  ECF No. 55.  Both motions are due to be denied.

### I.  Background

      In 1971, the Goodwins purchased beach-front property in Walton County ("County"), where they built a home that they occupy as their primary residence.  In June, 2016, the County adopted a beach obstruction ordinance, which states "[i]t shall be unlawful for any person to place, construct or maintain an obstruction on the beach.  Obstructions include, but are not limited to ropes, chains, signs, or

fences."  Walton Cty. Code, Sec. 22-55 ("Sign Ordinance").  In June of 2016, the Goodwins filed their Complaint in this case, raising a First Amendment Free Speech challenge to the Sign Ordinance, and filed a Motion for Preliminary Injunction.  The County responded, arguing that the public had a right to use the dry sand beach under the customary rights doctrine.  A consolidated and expedited trial on the Motion for Preliminary Injunction and the merits was scheduled, but on September 22, 2016, the County consented to the preliminary injunction, precluding enforcement of the Sign Ordinance during the pendency of the case.  The trial was then continued and the discovery period extended.

On October 25, 2016, the County enacted another ordinance, titled "Protecting the Public's Long-Standing Customary Use of the Dry Sand Areas of the Beaches." ("Customary Use Ordinance").  The Customary Use Ordinance, which will go into effect April 1, 2017, declares that "[t]he public's long-standing customary use of the dry sand areas of all of the beaches in the County for recreational purposes is hereby protected." *Id.* § 2.1.  It prohibits any "individual, group, or entity [from] impe[ding] or interfer[ing] with the right of the public at large, including the residents and visitors of the County, to utilize the dry sand areas of the beach that are owned by private entities for recreational purposes."  *Id.*  More specifically, the Ordinance provides that the public may, inter alia, walk, jog, sunbathe with or without a beach umbrella, picnic, fish, play beach games, build sand castles and other similar

traditional recreational activities on the dry sand area of the beach "owned by private entities." *Id.* The Ordinance, however, prohibits public recreation within a fifteen foot buffer zone "located seaward from the toe of the dune or from any permanent habitable structure owned by a private entity." The buffer zone does "not apply to the Walton County Sheriff's Office, the Walton County Tourist Development Council, the South Walton Fire District, and other emergency service providers." *Id.* The Customary Use Ordinance imposes a $500.00 fine on anyone who impedes or interferes with the public's use of the dry sand areas outside of the buffer zone.

On November 7, 2016, the Goodwins filed a First Amended Complaint, adding a facial physical takings challenge to the Customary Use Ordinance under the Fifth Amendment, Count II. ECF No. 41. They also filed a Motion for Preliminary Injunction to preclude the ordinance from becoming effective on April 1, 2017. The County filed a Motion to Dismiss the facial challenge.

## II. Motion to Dismiss

### A. Standard of Review

Federal pleading rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This requires a complaint to include "sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).  Legal "labels and conclusions" devoid of any factual support will not suffice and are not entitled to an assumption of truth.  *Id.* (quoting *Twombly*, 550 U.S. at 555 (2007)).  The "plausibility standard" requires a showing of "more than a sheer possibility" that the defendant is liable on the claim.  *Id.*  When reviewing a Rule 12(b)(6) motion to dismiss, the Court considers only the pleadings, attached exhibits, or documents incorporated into the complaint by reference.  *See Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).   In considering the motion, the Court accepts the allegations of the complaint as true and construes them in the light most favorable to the plaintiff.  *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam).

**B. Discussion**

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation."  U.S. Const. amend. V.   An unconstitutional taking occurs either because the government's action constituted an invalid exercise of the police power, *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 240 (1984) (stating "[t]he 'public use' requirement [of the Takings Clause] is . . . coterminous with the scope of a sovereign's police powers."), or the government denied a property owner just compensation when taking his property. *See Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 123-24 (1978) ("*Penn Central*").  The Takings Clause does not *per se* prohibit the taking of private

property; rather it requires just compensation for the property owner when a lawful taking occurs. *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985). Despite this basic premise, "the question of what constitutes a taking [remains] a problem of considerable complexity." *Gulf Power Co. v. United States*, 998 F. Supp. 1386, 1390 (N.D. Fla. 1998). There are several types of takings claims, with differing standards. *See Eide v. Sarasota Cty.*, 908 F.2d 716, 722 (11th Cir. 1990) (discussing different types of "takings" and noting that "often one cannot tell which claim has been brought or which standard is being applied.").

The classic taking involves the government's exercise of eminent domain to appropriate private property for public use, which is not at issue in this case. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537 (2005). Government regulation can also sufficiently interfere with the use of private property to the point that a taking occurs. *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). Generally, where a regulation interferes with private property, a court engages in "ad hoc, factual inquiries" under the multi-factor balancing test in *Penn Central* to determine whether a regulatory taking has occurred. *Penn Central*, 438 U.S. at 124. *Penn Central* requires the court to consider the economic impact on the property owner,

the government's interference with the property owner's investment backed interest, and the character of the government action.[1]  *Id.*

Additionally, the Supreme Court has staked out two narrow categories of *per se* regulatory takings.  *Lingle*, 544 U.S. at 538.  First, a *per se* regulatory taking occurs where government action deprives a property owner of all economically beneficial use of his property.  *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015-16 (1992).  The second category of *per se* regulatory takings occurs if there has been a permanent physical invasion of private property by the government.  *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435-40 (1982).  Within this category, a "physical" regulatory taking also occurs when a government action secures an exaction on private property for public access.  *Dolan v. City of Tigard*, 512 U.S. 374, 384-85 (1994); *Nolan v. Cal. Coastal Comm'n*, 483 U.S. 825, 831-34 (1987) (defining exactions as "commonplace conditions on approval of development").  The Goodwins have alleged that the County's Customary Use Ordinary is a *per se* physical taking of their property.

Ordinarily, a takings claim is raised as an "as-applied" challenge.  An as-applied claim considers "the particular impact of government action on a specific

---

[1]  The Supreme Court has "been unable to develop any set formula for determining when justice and fairness require that economic injuries caused by public action be compensated by the government."  *Kaiser Aetna v. U.S.*, 444 U.S. 164, 175 (1979) (quoting *Penn Central*, 438 U.S. at 124 (internal quotations omitted).

piece of property" and "requires the payment of just compensation." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 494 (1987). This type of as-applied challenge can only be brought after the plaintiff has availed himself of all available state procedures for seeking just compensation and been denied. *See Williamson Cty.*, 473 U.S. at 195 ("*Williamson County* ripeness doctrine"). A plaintiff may also raise a facial takings challenge to "the mere enactment" of a statute or regulation when it constitutes a taking. *Id.* Facial challenges to a statute or regulation have been allowed both where the regulation denies all economically viable use of land, and also where the regulation has authorized a physical taking. *See Hodel v. Va. Surface Mining & Reclamation*, 452 U.S. 264, 295 (1981) (quoting *Agins v. City of Tiburon*, 447 U.S. 255, 260 (1980) (citing *Penn Central*, 438 U.S. at 138 n.36)); *Gulf Power Co. v. United States*, 187 F.3d 1324, 1331 (11th Cir. 1999); *see also Keystone Bituminous*, 480 U.S. at 495 (quoting *Hodel*); *Lucas*, 505 U.S. at 1016 n.6 (quoting *Hodel*). Because the facial takings challenge is a narrow one, plaintiffs "face an uphill battle[] in making a facial attack." *Hodel*, 452 U.S. at 295.

In this case, the Goodwins challenge the County's Customary Use Ordinance on grounds that it constitutes a permanent physical invasion of their private beach property. In other words, they claim that the mere enactment of the ordinance is a *per se* regulatory taking. The County argues that the Goodwins' facial taking claim is not ripe because a facial takings claim is subject to the *Williamson County* ripeness

doctrine, which requires that a plaintiff have sought compensation through available state procedures before raising a takings claims, which the Goodwins have not done. The County also argues that even if the ripeness doctrine does not apply to a facial challenge, the Goodwins' claim is nonetheless due to be dismissed because they have actually raised (1) an improper substantially advances/due process challenge rather than a takings claim, or (2) an as-applied claim that is subject to the ripeness doctrine. The County argues further that the as-applied challenge is unripe both because the Ordinance has not yet been enacted, and also because the Goodwins have not sought compensation from the state. The County also argues that the Goodwins have "not alleged conduct by the County that rises to the level of a taking." ECF No. 55 at 3.

First, the County argues in a conclusory manner that the Goodwins have failed to state a claim because they have "not alleged conduct by the County that rises to the level of a taking." ECF No. 55 at 3. In response, the Goodwins argue that the County has waived this argument by failing to brief it. The Court need not decide whether the County waived the argument because the Goodwins have adequately pled a facial physical takings claim. *See Gulf Power Co.*, 187 F.3d at 1331. In order "to state a Takings claim under [ ] federal . . . law, a plaintiff must first demonstrate that he possesses a 'property interest' that is constitutionally protected." *Givens v. Alabama Dept. of Corr.*, 381 F.3d 1064, 1066 (11th Cir. 2004). The factual

allegations in this case plainly assert that the Goodwins have a protected property interest in the dry sand area of the beach inland from the mean high water line. Additionally, the Goodwins have alleged that the mere enactment of the County's ordinance is an unlawful, physical invasion of theirs and others' private dry sand beaches. As such, the Goodwins have adequately alleged a facial physical takings claim.

Regarding the County's argument that the Goodwins' claim is in essence an as-applied challenge rather than a facial change, the Court disagrees. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). It is then the court's function to "draw legal conclusions from the facts pled." *Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1303 (11th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678). In this case, the County chose to adopt an ordinance that applies the customary use doctrine to privately owned sandy beaches throughout Walton County. The Goodwins have alleged that the *mere enactment* of the Customary Use Ordinance is facially unconstitutional because it authorized a physical invasion by the public onto private land. *See Loretto*, 458 U.S. at 435 ("The power to exclude has traditionally been considered one of the most treasured strands in an owner's bundle of property rights.") (citing *Kaiser Aetna*, 444 U.S. at 179-80). Moreover, the Goodwins have

alleged facts that the Customary Use Ordinance amounts to a taking of "the Goodwins' *and others'* private dry sand beach." ECF No. 41 at 15 (emphasis added). Because the Goodwins do not allege that only their "specific piece of property" has been "particular[ly] impact[ed] [by the] government action," the claim is a facial challenge. *Keystone Bituminous*, 490 U.S. at 494. Accordingly, the Court finds no support for the argument that the facts as alleged give rise to an as-applied rather than a facial challenge.[2]

Alternatively, the County argues that the Goodwins' claim should be dismissed because the Goodwins are actually raising an invalid "substantially advances" taking claim rather than a facial physical takings claim. The "substantially advances" regulatory taking claim was first articulated in *Agins v. City of Tiburon*, 447 U.S. 255 (1980), in which the Supreme Court held that a taking occurred when the government's regulation of private property did not "substantially advance" the government's interest *or* denied an owner all economically viable use of his property. *Id.* at 260. The County is correct that the Supreme Court has since abandoned the "substantially advances" regulatory takings claim. *See Lingle*, 544 U.S. at 545. However, the Court in *Lingle* did not abandon all facial takings claims,

---

[2] The County maintains that the as-applied challenge is due to be dismissed as unripe under the *Williamson County* ripeness doctrine because the Goodwins have failed to exhaust available state remedies. Because the Goodwins do not raise an as-applied challenge, the claim need not be dismissed for ripeness reasons under *Williamson County*.

only the substantially advances claim, finding the claim more akin to a due process challenge. *Id.* at 542. Therefore, facial takings claims can still be valid even after *Lingle*. It is clear from the First Amended Complaint that the Goodwins have brought a facial physical invasion takings claim, not a "substantially advances" takings claim; thus, the claim is not due to be dismissed on this ground.

Additionally, the County argues that the Goodwins' facial taking claim is not ripe under the *Williamson County* ripeness doctrine; however, the Court disagrees.[3] The doctrine does not apply to a *facial* takings claim because a facial challenge is "generally ripe the moment the challenged regulation or ordinance is passed."[4] *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 736 n.10 (1997); *Lucas*, 505 U.S. at 1013 n.4 ("Facial challenges are ripe when the [ordinance] is passed."). Unlike as-applied takings challenges, which seek just compensation, a facial challenge does not "depend on the extent to which [plaintiff]s are deprived of the economic use of their particular pieces of property or the extent to which these particular [plaintiffs] are compensated." *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992). Rather, a facial physical takings claim depends on whether the "mere

_____

[3] Although the County moves to dismiss under Rule 12(b)(6), their ripeness argument is more appropriately addressed under Rule 12(b)(1) for lack of jurisdiction. *See Lord Abbett Mun. Income Fund, Inc. v. Tyson*, 671 F.3d 1203, 1205 (11th Cir. 2012).

[4] Also, to the extent the County suggests that the facial taking claim is unripe because the ordinance does not go into *effect* until April 1, 2017, the Court disagrees. Because the ordinance has clearly been *enacted*, the facial takings claim is ripe.

enactment of a piece of legislation" effects a *per se* taking of property under the Fifth Amendment.  *See Suitum*, 520 U.S. at 736 n.10; *see also Gulf Power Co.*, 187 F.3d at 1331 (concluding that the mandatory access provision of the Pole Attachment Act was facially unconstitutional as a *per se* physical invasion of property).  As such, "by their nature," facial challenges are immediately ripe because they "request[] relief distinct from the provision of 'just compensation.'"  *San Remo Hotel, L.P. v. City & Cty. of San Francisco, Cal.*, 545 U.S. 323, 345-46 (2005).  Accordingly, because the Goodwins' have alleged a facial physical takings challenge, which states that the Ordinance unlawfully permits the public to invade their private property, their claim is ripe.[5]  *See also Abu-Khadier v. City of Fort Myers, Fla.*, Case No. 2:12-CV-387-FTM-29CM, 2014 WL 3446416, at *4 (M.D. Fla. July 15, 2014) (holding that a facial challenge to an ordinance does not require compliance with ripeness doctrine) (citing *Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach, Fla.*, 727 F.3d 1349, 1359 n.6 (11th Cir. 2013)).

## III.  Motion for Preliminary Injunction

The Goodwins have requested that the Court issue a preliminary injunction enjoining the County's Customary Use Ordinance, which is due to take effect on April 1, 2017.  ECF No. 43.  The County argues that a preliminary injunction is not

---

[5]  Because the Goodwins' facial physical takings claim is ripe the Court need not consider the Goodwins' argument that the claim should nevertheless be considered for prudential reasons. ECF No. 56 at 10.

an available remedy for a takings claim and, in the alternative, that the Goodwins have not met their burden for injunctive relief.[6]

As a threshold matter, the Court must address whether a preliminary injunction is an available remedy for a facial takings claim. The Takings Clause of the Fifth Amendment "does not prohibit the taking of private property, but instead places a condition on the exercise of that power" by securing compensation in the event of an otherwise lawful taking. *First English Evangelical Lutheran Church of Glendale v. Cty. of Los Angeles, Cal.*, 482 U.S. 304, 314-15 (1987) ("*First English Evangelical*"). However, facial takings challenges are a horse of a different color, because the relief requested is declaratory and injunctive, rather than just compensation. *See San Remo*, 545 U.S. at 345-46. Therefore, "despite the strong presumption that damages, not injunctive relief, are the appropriate remedy in a Takings Clause action," injunctive relief is available in limited circumstances. *Peters v. Vill. of Clifton*, 498 F.3d 727, 732-33 (7th Cir. 2007) (recognizing that injunctive relief may be granted where there are either "unavailable or inadequate procedures" for seeking just compensation); *see also Philip Morris, Inc. v. Harshbarger*, 159 F.3d 670, 680-81 (1st Cir. 1998) (affirming a preliminary injunction that was based on a facial takings claim); *D.A.B.E., Inc. v. City of Toledo*,

---

[6] The County also reiterates its argument that the Goodwins have not asserted a facial takings claim, and in the alternative, that the claim is not ripe. The Court has rejected these arguments.

292 F. Supp. 2d 968, 973 (N.D. Ohio 2003) (recognizing that a preliminary injunction is an available remedy for a facial regulatory takings claim), *aff'd*, 393 F.3d 692 (6th Cir. 2005).  Accordingly, the Court finds that injunctive relief may be an available remedy for a facial takings claim.

The decision to grant or deny a motion for preliminary injunction "is within the sound discretion of the district court."  *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002).  To obtain a preliminary injunction, the moving party must demonstrate each of the following by a preponderance of the evidence:

> (1) that there is "a substantial likelihood of success on the merits of the underlying case,"
> (2) that the moving party "will suffer irreparable harm in the absence of an injunction,"
> (3) that the balance of harm to the moving party in the absence of an injunction would outweigh the harm to the opposing party from issuance of an injunction, and
> (4) that "an injunction would not disserve the public interest."

*Grizzle v. Kemp*, 634 F.3d 1314, 1320 (11th Cir. 2011) (internal marks omitted); *see also LSSi Data Corp. v. Comcast Phone, LLC*, 696 F.3d 1114, 1119 (11th Cir. 2012). In this circuit, it is well settled that "a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to all four elements."  *CBS Broadcasting, Inc. v. Echostar Commc'ns. Corp.*, 265 F.3d 1193, 1200 (11th Cir. 2001) (internal marks omitted), *cert. denied*, 535 U.S. 1079 (2002).  In deciding whether to grant a preliminary injunction, courts should be mindful that "the chief function of a preliminary injunction is to preserve

the status quo until the merits of the controversy can be fully and fairly adjudicated." *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001) (quoting *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1284 (11th Cir. 1990)).

Having reviewed the record and the parties' arguments, the Court finds that the Goodwins have not shown that they will suffer an irreparable injury in the absence of an injunction. To the extent the Customary Use Ordinance is ultimately determined to be facially unconstitutional, the Goodwins' remedy for the facial invalidity of the ordinance will be *limited* in this case to declaratory and injunctive relief. *See San Remo*, 545 U.S. at 345-46 (noting that facial challenges are immediately ripe because they "request[] relief distinct from the provision of 'just compensation.'"). Because a *preliminary* injunction is an extraordinary remedy, however, and the Court must be satisfied that issuing the injunction will not harm the public interest, preliminary relief is appropriate "only when that legal right has been infringed by an injury for which there is no adequate legal remedy and which will result in irreparable injury if the injunction does not issue." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005). If the Goodwins are successful in this suit, they will obtain the only requested relief, declaratory and injunctive relief. At that time, the only harm they could have suffered in the interim is the temporary loss of the right to exclude the public from their beach during the

time this suit was pending.  However, the remedy for that sort of temporary taking for a public use, if in fact it has harmed the Goodwins, would be a request for "just compensation," which is not before this Court.[7]  *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 328-29 (2002) (noting that a temporary taking may or may not be compensable, but that it is a question first for the state court).  And where a harm is capable of being remedied by a monetary payment, there is no irreparable injury.  *See Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies.") (quoting *Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983)); *see also Deerfield Med. Ctr. v. City of Deerfield Beach, Fla.*, 661 F.2d 328, 338 (5th Cir. 1981) (same).  Thus, the Goodwins cannot demonstrate that they will suffer irreparable injury if they do not receive preliminary injunctive relief.[8]  *See generally Wisconsin Cent. Ltd. v. Pub. Serv. Comm'n of Wisconsin*, 95

---

[7]  The Court acknowledges that it may appear inconsistent to say that, on the one hand, the Goodwins' facial takings challenge is ripe without having sought just compensation, and on the other, to say that there is no irreparable harm because just compensation is available in state court; however, it is important to note that facial takings challenges present a narrow, peculiar exception to the requirement of just compensation, and does not preclude the availability of a later request for just compensation if a taking has occurred.

[8]  The Court notes that the Goodwins have not requested the remedy of just compensation at all, which, if they did at this point, would be considered an unripe *as-applied* challenge under the *Williamson County* ripeness doctrine.  *See Williamson Cty.*, 473 U.S. at 195 (ripeness doctrine); *see also Busse v. Lee Cty., Fla.*, 317 F. App'x 968, 972 (11th Cir. 2009) (recognizing that Florida procedures provide remedy for takings violations).  Ultimately, if a taking has occurred during this suit by reason of the Customary Use Ordinance, "no subsequent action by the government can relieve [the County] of the duty to provide compensation for the period during which the taking

F.3d 1359, 1369 (7th Cir. 1996) (stating, where just compensation is a remedy, and the aggrieved party has "failed to perfect their available remedies under state law," irreparable harm cannot be shown).  Moreover, to the extent the Goodwins also argue that the failure to enjoin the Customary Use Ordinance will harm their First Amendment rights, the Court disagrees.  The County has already consented to a preliminary injunction regarding the Sign Ordinance, which is the basis for the Goodwins' free speech claim.  Based on that consent, the Court has previously entered an order enjoining the enforcement of that ordinance, which remains in effect.  ECF No. 34.

Additionally, the balance of harms inquiry of the preliminary injunction analysis shows that the balance swings in favor of the public interest.  If this Court grants a preliminary injunction and the County ultimately prevails (by showing that the public has enjoyed longstanding customary use of the beach), then the public would have suffered.  Specifically, the preliminary injunction would have caused harm to the public's interest during the pendency of this suit, which is not compensable.  Because the Goodwins have failed to clearly establish the burden of persuasion as to two of the four prerequisites for preliminary injunctive relief by failing to show irreparable injury or a favorable balance of harms when injunctive

---

was effective."  *First English Evangelical*, 482 U.S. at 305 & 315, 318, 321; *see also Tahoe-Sierra Pres. Council, Inc.*, 535 U.S. at 328 (2002).

relief is considered against the public interest, the Court need not address the remaining elements.  The motion is due to be denied.

Accordingly, the County's Motion to Dismiss, ECF No. 55, is **DENIED** and the Goodwins' Motion for Preliminary Injunction is **DENIED**.  ECF No. 43.  The previously entered stay of discovery is lifted, and the parties have 45 days to complete discovery.

**DONE** and **ORDERED** this 31st day of March, 2017.


*M. Casey Rodgers*

**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**